

# NUMBER 13-25-00507-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

DANIEL MARTINEZ
CAMPOS JR.,                                                    Appellant,

v.

THE STATE OF TEXAS,                                            Appellee.

---

## ON APPEAL FROM THE COUNTY COURT AT LAW NO. 13
## OF BEXAR COUNTY, TEXAS

---

## MEMORANDUM OPINION

**Before Chief Justice Tijerina and Justices Silva and Cron
Memorandum Opinion by Justice Cron[1]**

---

[1] This case is before the Court on transfer from the Fourth Court of Appeals pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE §§ 22.220(a) (delineating the jurisdiction of appellate courts), 73.001 (granting the supreme court the authority to transfer cases from one court of appeals to another at any time that there is "good cause" for the transfer). We are bound by the precedent of the transferring court to the extent that it differs from our own. *See* TEX. R. APP. P. 41.3.

This is an appeal from an order revoking appellant Daniel Martinez Campos, Jr.'s community supervision and adjudicating him guilty for assault causing bodily injury, a Class A misdemeanor. *See* TEX. PENAL CODE § 22.01. Presented as a single issue, appellant argues "the trial court erred in adjudicating [him] guilty when there was no evidence presented that he was financially capable of complying by attending and completing court ordered classes." We affirm.

## I. BACKGROUND

After appellant pleaded no contest to the above-referenced offense, the trial court placed him on deferred-adjudication community supervision for two years. The State subsequently moved to enter adjudication of guilt and revoke his community supervision, alleging he failed to: (1) "submit to drug testing" (condition two); (2) "complete forty-eight hours of [c]ommunity [s]ervice [r]estitution" (condition fifteen); (3) "attend, comply with all rules, regulations, instructions, and financial agreements, as directed by the Court and/or Supervision Officer and/or the head of or authorized personnel of the following Counseling/Education program: State Accredited Battering Intervention and Prevention Program" (condition nineteen); and (4) "apply for [a parenting program and], provide documentation of attendance and comply with all rules, regulations, instructions, and financial agreements" (condition twenty).[2]

A contested hearing on the State's motion was held on August 19, 2025. When the trial court asked the State to read what it was alleging and further instructed the State to "read what you think you need to" from the motion, the State proceeded to read aloud

---

[2] We observe that it appears a motion to enter adjudication of guilt and revoke community supervision (Adult Probation) dated March 19, 2024, was filed before the December 6, 2024 motion, but it was later withdrawn on August 6, 2024.

2

violations of conditions nineteen and twenty. Appellant pleaded "not true" to both allegations. The State, in support of its motion, then called two witnesses, community supervision officers, Maria Chavez and Jose Garcia-Alvarez.

According to Chavez, the "intake" officer, she read appellant his community supervision conditions, and he indicated to her that he understood them.[3] Garcia-Alvarez testified that he supervised appellant, and as to conditions nineteen and twenty, he confirmed that appellant failed to provide him with a certification of completion for the Batterer's Intervention and Prevention Program (BIPP) and the parenting class. When asked by the State if appellant gave any reason as to why he could not complete his conditions, Garcia-Alvarez responded that appellant "did mention that it was lack of fees, and that CPS was [i]n the process of helping him with those . . . two programs, [BIPP] and the parenting program." Garcia-Alvarez also confirmed that appellant enrolled in BIPP but was later exited for excessive absences.

On cross-examination, he testified that appellant mentioned he was having financial problems, but he did not know for certain whether appellant was homeless at the time. Additionally, Garcia-Alvarez testified that, according to his notes, appellant had a job in construction, and he was getting paid "[$]800 per salary, but he never—he never broke it down to hourly[.]"

After the trial court posed a few questions to Garcia-Alvarez, the State called no further witnesses, and after receiving a recommendation from his counsel, appellant declined to testify. The trial court then explained to the parties how he viewed the

---

[3] We note that Chavez confirmed that she translated appellant's community supervision conditions that were in English to Spanish.

3

evidence and asked each party if after having heard his thoughts they had anything further to add. The State declined, but the following exchange ensued with appellant's counsel:

| THE COURT: | Sir, I told you where I stand on the—how I see the evidence. Do you have any response to any and all of that? |
| --- | --- |
| [Appellant's Counsel]: | Yes, Your Honor. We're asking for—if you do revoke, the probation officer [sic]—probation of the defendant, Your Honor, we're asking mercy, Your Honor. He didn't—He did not commit another new offense, Your Honor. He's failed to report and go through the BIPP classes, based on the circumstances at the time, Your Honor. |
| THE COURT: | Okay. So what do you suggest is appropriate, sir? |
| [Appellant's Counsel]: | Well, Your Honor, we leave it to the discretion of the Court. |
| THE COURT: | Everybody says that, but I'm asking you what do you think is appropriate, sir. |
| [Appellant's Counsel]: | Well, Your Honor, if you do revoke probation officer [sic], we're asking for the minimum time, 30 days, Your Honor, in the county jail. |

Thereafter, as to the allegations, the trial court found them to be "true" and adjudicated appellant guilty. Before pronouncing the sentence, the trial court afforded the parties "one last chance to tell me anything you want." The State discussed the underlying offense and pressed for a family violence finding, and appellant's counsel asked for "mercy." Appellant was then sentenced to four months in the Bexar County jail. *See id.* § 12.21. This appeal followed.

4

## II.    DISCUSSION

## A.    Standard of Review and Applicable Law

We review an order revoking community supervision under an abuse of discretion standard. *Hacker v. State*, 389 S.W.3d 860, 865 (Tex. Crim. App. 2013). The State must prove by a preponderance of the evidence that the defendant violated a term of his community supervision. *See Rickles v. State*, 202 S.W.3d 759, 763–64 (Tex. Crim. App. 2006); *Cobb v. State*, 851 S.W.2d 871, 873 (Tex. Crim. App. 1993); *see also Johnson v. State*, No. 04-24-00374-CR, 2025 WL 1129039, at *3 (Tex. App.—San Antonio Apr. 16, 2025, no pet.) (mem. op., not designated for publication). Proof by a preponderance of the evidence of one alleged violation is sufficient to revoke community supervision and adjudicate guilt. *See Smith v. State*, 286 S.W.3d 333, 342 (Tex. Crim. App. 2009); *see also Brown v. State*, No. 05-19-00128-CR, 2020 WL 64672, at *2 (Tex. App.—Dallas Jan. 7, 2020, no pet.) (mem. op., not designated for publication). "In the probation-revocation context, a preponderance of the evidence means that greater weight of the credible evidence which would create a reasonable belief that the defendant has violated a condition of his probation." *Hacker*, 389 S.W.3d at 865 (citation modified).

"When the State has failed to meet its burden of proof, the trial [court] abuses [its] discretion in issuing an order to revoke probation." *Cardona v. State*, 665 S.W.2d 492, 493–94 (Tex. Crim. App. 1984) (citing *Walkovak v. State*, 576 S.W.2d 643 (Tex. Crim. App. 1979)). "In making this determination, we examine the evidence in the light most favorable to the trial court's findings to determine whether it could make the findings that were returned." *Martinez v. State*, 563 S.W.3d 503, 510 (Tex. App.—Corpus Christi–Edinburg 2018, no pet.) (citations omitted). If there is one sufficient ground for revocation,

5

then an abuse of discretion is not shown. *Sanchez v. State*, 603 S.W.2d 869, 871 (Tex. Crim. App. 1980). Furthermore, "the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony, and we review the evidence in the light most favorable to the trial [court's] ruling." *Smith v. State*, 587 S.W.3d 413, 419 (Tex. App.—San Antonio 2019, no pet.) (citation omitted).

**B.    Analysis**

While presented as a sufficiency challenge, it appears appellant raises a constitutional challenge in the body of his brief. Relying on *Bearden and Brimzy*, appellant argues that the "trial court" was required to have considered his financial capability to pay for the court-ordered classes, i.e., the BIPP and the parenting class, before it revoked his community supervision, and its failure to do so violated his federal due process and equal protection rights. *See Bearden v. Georgia*, 461 U.S. 660, 672 (1983) (holding "that in revocation proceedings for failure to pay a fine or restitution, a sentencing court must inquire into the reasons for the failure to pay"); *Brimzy v. State*, 726 S.W.3d 379, 392 (Tex. Crim. App. 2025) ("[B]earden said nothing about whether or how to assign a burden of proof on the issue of the probationer's ability to pay, instead assigning a due process obligation on the trial court *sua sponte* to inquire."); *see also Gipson v. State*, 383 S.W.3d 152, 157 (Tex. Crim. App. 2012) ("*Gipson I*") ("[B]eardon prescribes a mandatory judicial directive, not a prosecutorial evidentiary burden."); *Gipson v. State*, 428 S.W.3d 107, 111 (Tex. Crim. App. 2014) ("*Gipson II*") (Alcala, J., concurring) (explaining that "[t]he outcome of a defendant's appeal . . . could be entirely different depending on whether the case is analyzed under the Texas statute or the federal Constitution").

To preserve error for review, a litigant must timely object and state the grounds for

6

the ruling sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context of the objection. TEX. R. APP. P. 33.1; *see also* G*onzalez v. State*, No. 04-25-00415-CR, 2026 WL 1676400, at *1 (Tex. App.—San Antonio June 10, 2026, no pet.) (mem. op., not designated for publication). This is so even if the error of which an appellant complains concerns constitutional rights. *See Cazarez v. State*, 606 S.W.3d 549, 561 (Tex. App.—Houston [1st Dist.] 2020, no pet.) (citation omitted); *see also Shah v. State*, 403 S.W.3d 29, 36 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd).

Here, even if we assume without deciding that the costs at issue fell under *Bearden's* instruction as appellant appears to contend, appellant did not raise any objections during the hearing or make it clear to the trial court that his constitutional rights were being violated. *Compare Cazarez*, 606 S.W.3d at 559–61 (concluding appellant forfeited his federal due process complaint, in which he cited to *Bearden*, given he did not "raise an objection in the trial court regarding any failure to consider his reasons for failing to pay or alternatives to imprisonment before incarcerating him") *with Rusk v. State*, 440 S.W.3d 694, 704 (Tex. App.—Texarkana 2013, no pet.) (concluding appellant preserved his "*Bearden* issue" after explaining that at "the revocation hearing, [appellant] complained that a revocation resulting in imprisonment would be a constitutional violation. [Appellant] alleged that he lacked the ability to pay the fees, claiming that it is unconstitutional under both the United States and Texas Constitutions to revoke community supervision based solely on poverty. [Appellant's] objection consumed approximately one-sixth of the revocation hearing and was sufficient to make the trial court aware of his complaint."); *see also See Gipson II*, 428 S.W.3d at 110 (Alcala, J.,

7

concurring) ("Although appellant presented no objections that he was unable to pay his fine and fees, his sufficiency-of-the-evidence challenge under the ability-to-pay statute may be addressed on appeal, but his complaint under the federal Constitution may not."); *Castillo v. State*, No. 04-04-00169-CR, 2005 WL 357155, at *2 (Tex. App.—San Antonio Feb. 16, 2005, no pet.) (mem. op., not designated for publication) ("The general rule that an appellate court will not consider any error that was not called to the attention of the trial court at the time when it could have been avoided or corrected also applies to constitutional error."); TEX. R. APP. P. 33.1.

Indeed, even with two invitations from the trial court to speak up, appellant only asked that, in the event of revocation, the trial court show "mercy" or "30 days" confinement. In other words, despite an opportunity to complain that revocation resulting in confinement in this situation would be a constitutional violation, appellant's counsel failed to do so. *See Rogers v. State*, 640 S.W.2d 248, 265 (Tex. Crim. App. [Panel Op.] 1981) (op. on State's second motion for reh'g) (holding that when appellant failed to voice his due process objection he waived his complaint in the revocation hearing); *see also Johnson*, 2025 WL 1129039, at *5 ("Ultimately, [appellant] did not raise any objections at trial or make it clear to the trial court that his due process rights were being violated. [Appellant] presented a generalized request to remain on probation, after many prior Motions to Revoke filed against him for the same type of alleged behavior. As such, [appellant] has failed to preserve his constitutional challenge of a due process violation for review." (citations omitted)). Thus, we conclude that appellant has failed to preserve his constitutional challenge.

Additionally, to the extent appellant is also arguing that the State failed to comply

8

with article 42A.751(i) of the Texas Code of Criminal Procedure (i.e., the "failure-to-pay statute," *see Brimzy*, 726 S.W.3d at 380), as to both of the alleged costs and assuming article 42A.751(i) applies in this context, we nonetheless need not decide that issue, *see* TEX. R. APP. P. 47.1, because the transferor court has already provided an answer as it relates to any "cost" of BIPP.[4] *See* TEX. R. APP. P. 41.3; *see also Johnson*, 2025 WL 1129039, at *5 n.8 ("[O]ne element of BIPP is to abide by the financial agreements of the program. To the extent that [appellant] was required to pay for the cost of attending the BIPP course, that cost is *not* the type that requires an inquiry into [appellant's] ability to pay under the Texas statute." (emphasis added)). In short, the failure-to-pay statute is inapplicable. Nevertheless, even if we assume the costs at issue fell under the purview of article 42A.751(i), the State proceeded at the revocation hearing upon a motion that contained allegations beyond the "simple" claim of nonpayment of one of the enumerated fees. *See Brimzy*, 726 S.W.3d at 390 ("[A]ny time the State proceeds at the revocation hearing upon a pleading that contains allegations beyond the "simple" claim of nonpayment of one of the enumerated fees, the statutory condition is not triggered, and the State has no burden (at least none imposed by the statute) to prove that the probationer could have paid but did not."). Namely, the State proceeded with condition nineteen that appellant "fail[ed] to attend" BIPP. *See id.* Thus, we conclude article

---

[4] We recognize that this Court in *Martinez v. State* concluded that "'community supervision fees' in the ability-to-pay statute [more recently referred to as the failure-to-pay statute] applies to any and all fees imposed on a defendant, as conditions of community supervision, which serve a remedial purpose of compensating the State for costs associated with the defendant's prosecution and community supervision." 563 S.W.3d 503, 515 (Tex. App.—Corpus Christi–Edinburg 2018, no pet.). However, we do not need to decide whether the cost of BIPP—a cost not at issue in *Martinez*—serves a "remedial purpose of compensating the State for costs associated with the defendant's prosecution and community supervision" because we follow the precedent of the transferor court. *See* TEX. R. APP. P. 41.3; *see also Johnson v. State*, No. 04-24-00374-CR, 2025 WL 1129039, at *5 n.8 (Tex. App.—San Antonio Apr. 16, 2025, no pet.) (mem. op., not designated for publication).

9

42A.751(i) is inapplicable here. *See* TEX. CODE CRIM. PROC. art. 42A.751(i).

Finally, we conclude sufficient evidence showed appellant violated condition nineteen because Garcia-Alvarez testified that appellant failed to provide him with a certification of completion for BIPP and that he was dismissed from the program for too many absences. *See Smith*, 587 S.W.3d at 419; *see also James v. State*, No. 05-20-00453-CR, 2022 WL 780445, at *3–4 (Tex. App.—Dallas Mar. 15, 2022, no pet.) (mem. op., not designated for publication). Accordingly, because only "one sufficient ground is necessary to support a trial court's decision to revoke community supervision[,]" *Cazarez*, 606 S.W.3d at 559, the trial court's order may be upheld on this ground alone.

### III.    CONCLUSION

We affirm.

JENNY CRON
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
6th day of August, 2026.